WREY, *Appellant,*

*v.*

GRAHAM, *Respondent.*

554 P2d 498

*William B. Wyllie,* Salem, argued the cause and filed the brief for appellant.

*Ben Graham, Jr.,* Dallas, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and O'Connell, Tongue and Bryson, Justices.

TONGUE, J.

**TONGUE, J.**

This is an action to recover money "loaned" by plaintiff to defendant. The case was tried before the court, without a jury. Plaintiff appeals from a judgment in favor of defendant. We affirm.

The sole assignment of error on this appeal is that:

"The trial court erred in overlooking the attorney-client relationship between Graham and Wrey and in finding that the loans of $9,500 were an investment by Wrey in the restaurant and lounge, notwithstanding the personal promissory note from Graham to Wrey and his wife."

Although the testimony was conflicting, it appears from examination of the record that there was evidence from which the trial court could have found the following facts:

In December 1973 plaintiff and Robert Voepel learned of a restaurant in Roseburg that could be acquired for a relatively small amount of money and talked to defendant about purchasing it. At that time it was "determined" that plaintiff had assets that were the "most favorable" source of financing the purchase of that restaurant, including a $3,000 retirement check and a house being purchased on contract. The plan was that Voepel, who had the "know-how" would be manager, plaintiff would be assistant manager and both would work at the restaurant. Defendant was to provide the legal advice. It was also agreed that the liquor license should be applied for in the name of defendant as the one most likely to be able to secure such a license.

No written or other definite agreement was made at that time, but there was a general understanding that if and when the business "began to prosper," a corporation or partnership would be formed and shares would be issued on some undefined basis to plaintiff, Voepel and defendant.

In accordance with that arrangement, plaintiff paid

$3,000 to defendant in December 1973. Plaintiff and Voepel then went to Roseburg where they both worked at the restaurant in an attempt to make the venture a success, but encountered considerable financial difficulty. In the course of these difficulties defendant also put some $15,000 into the business.

In March 1974 the parties talked about raising $6,500 of additional funds by refinancing plaintiff's house, which was being purchased by him on contract and was considered to be "the only available source" of funds. They then agreed upon an arrangement under which defendant would refinance the house, taking title in the property, and "sell it back" to plaintiff on a new contract. The $6,500 so raised was used to pay a $4,000 tax lien and other business expenses.

At the time of that transaction defendant prepared the following note:

"3/25/74

"Received of Jack D. Wrey and Joan Wrey $3000 in Dec. 1973 and $6,500 on Mar. 25, 1973 [sic]. These funds were loans to secure the Horsefeathers & The Ark Rest. & Lounge in Roseburg Oregon. Said purchase still pending. The Loans to be repaid from The Ark & The Horsefeathers. The sums shall bear interest at the rate of 8%, until paid. —

Ben Graham J
Executed Salem, Oregon"

Plaintiff testified that the payments of $3,000 and $6,500 were loans to defendant. He also admitted, however, that "if the club was not on a paying basis [he] would not get [his] money back" and that he put "more money into the club in hopes of getting [his] money back."

The business was not successful financially, however, and in May 1964 it was closed by order of the Oregon Liquor Control Commission. Shortly afterwards, defendant's application for a liquor license was approved. Defendant testified that he then offered plaintiff "a share in the business" and discussed with

him the possibility of reopening the restaurant if they could raise the money necessary to do so, but that neither of them had the necessary funds at that time.

In an attempt to recoup his losses, which then exceeded $15,000, defendant then sold plaintiff's former house. He also transferred the liquor license, together with other assets owned by the business to another corporation of which he was a part owner. Apparently, however, the business had more obligations than assets.

Mr. Voepel, one of the three parties to this venture and a disinterested witness in this litigation, characterized it as "a gamble," stating that "* * * I lost the same as plaintiff. He gambled and he lost."

To the same effect, after hearing the testimony, the trial court found as follows:

> "As to the [restaurant] operation the Court finds that this was in the nature of a joint venture undertaken by plaintiff, defendant and a 3rd party. It was unsuccessful, and the parties lost money. The plaintiff did not make any loan to the defendant individually any more than defendant made a loan of money to plaintiff for monies which defendant advanced from his own funds. Each advanced considerable sums of money to the venture. It was a gamble and they lost."

Based upon our examination of the record we hold that these findings by the trial court were supported by substantial evidence.

As previously noted, plaintiff also contends that the trial court "erred in overlooking the attorney-client relationship" between plaintiff and defendant. Thus, plaintiff contends that the "loan" of $9,500 was voidable because defendant, as an attorney, breached his fiduciary duty to plaintiff, as his client, in that he "borrowed" money from plaintiff without advising plaintiff to seek independent advice. Plaintiff also contends that defendant, as an attorney, breached his fiduciary duty to plaintiff, as his client, in that defendant "conditioned" repayment of the "loan" upon

the "proceeds" of the business and "controlled" that "conditional source of the repayment."

In response to these contentions, it is again to be noted that there was substantial evidence to support the finding by the trial court that the transaction involved in this case was not a "loan," but was in the nature of a "joint venture." Furthermore, there was no evidence of an attorney-client relationship prior to the $3,500 transaction in December 1973. There was also evidence from which the trial judge could find that prior to the $6,500 transaction in March 1974 the only matter in which defendant had previously purported to act as attorney for plaintiff was in connection with an NSF check. That check had been issued by plaintiff in payment of an obligation of the business. Thus, this representation related to the business, rather than to plaintiff as an "individual" client. It was not until after March 1974 that defendant made arrangements for the refinancing of plaintiff's house and represented plaintiff's wife in arranging an assignment of her wage checks to protect her from creditors. There was also testimony that plaintiff was represented by at least one other lawyer during this period and that he made a statement to the effect that he did not want defendant to represent him as his attorney because "I'd be a fool to have a business partner as an attorney."

Under these facts, we hold that neither the $3,500 transaction in December 1973 nor the $6,500 transaction in March 1974 were invalidated by reason of defendant's representation as an attorney of either plaintiff or his wife.

Finding no error, the judgment of the trial court is affirmed.